IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CAMERON NESBITT (2) | No. 2:25-CR-088-Z-BR(2) |

# GOVERNMENT'S TRIAL BRIEF

The United States of America (the government) files its Trial Brief as follows. Defendant Cameron Nesbitt is charged with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 846; and Possession with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(viii). Nesbitt's co-defendant, Johian Scott, pled guilty to Count One of the Indictment.

The Government intends to call the following witnesses in the following order:[1]

1. DPS Trooper Edgar Castillo
2. DEA Task Force Officer Thomas Newton
3. DEA Special Agent Joseph Curtis
4. DEA Task Force Officer Vernon Wilson

The government may call the following witnesses in the following order:

5. DEA Senior Forensic Chemist Kevin Robertson
6. DEA Senior Fingerprint Specialist Stacey Loggins
7. DEA Special Agent Fernando Burga
8. DEA Task Force Officer Jose Barron

---

[1] In making this representation, the government does not intend to waive its right to revise its trial strategy regarding its witness order or the proposed content of their testimony. The government is simply making a good-faith effort to inform the Court and the defendant of what it currently expects to present.

**Cameron Nesbitt**
**Government's Trial Brief – Page 1**

9. DPS Trooper Trevor Topper
10. DPS Trooper Richard Pacheco
11. DPS Trooper Tanner Tyk

This is a drug-trafficking case with straightforward facts. Defendant Cameron Nesbitt and his co-defendant were transporting approximately 44.12 kilograms (97.2 pounds) of methamphetamine from Lancaster, California, to Atlanta, Georgia. The government will prove the charges in Counts One and Two with the same evidence and testimony discussed below.

Trooper Edgar Castillo

Trooper Castillo will testify that he was on patrol on Interstate 40 in Oldham County, Texas, when he observed a black Toyota Corolla traveling above the posted speed limit, in violation of the Texas Transportation Code. He stopped the vehicle for the violation. The driver identified himself as Johian Scott and the passenger identified himself as Cameron Nesbit. Trooper Castillo explained the reason for the traffic stop and told Scott that he would issue a warning. Trooper Castillo asked Scott to exit the vehicle.

Trooper Castillo will testify regarding Scott's and Nesbitt's behavior and other factors that gave rise to reasonable suspicion that the two were transporting controlled substances. For example, he will testify that Nesbitt told him that Scott was his longtime friend and that they were traveling from California to Georgia to visit Nesbitt's brother. He will testify that Nesbitt, however, could not say where he and Scott would be staying upon reaching their destination and did not answer when he asked Nesbitt to tell him Scott's name.

Trooper Castillo will testify regarding his conversation with Scott. He will testify that Scott appeared tense and nervous. He will testify that Scott told him that his girlfriend rented the Toyota Corolla and that he and Nesbitt would be staying with Nesbitt's brother in Georgia. Trooper Castillo will testify that Scott gave him the rental agreement for the car, as well as an Avis rental tag. The rental agreement, marked as Government's Exhibits 30 and 31, showed that the vehicle had been rented by a third party from Avis for July 31, 2025, to August 7, 2025. The rental tag, marked as Government's Exhibits 32 and 33, showed Nesbitt's California driver's license number handwritten next to the word "name" and the word "Nesbitt" handwritten next to the line "car space number." Trooper Castillo will testify that he returned the documents to Scott and later retrieved them from Scott's pocket after his arrest.

Trooper Castillo will testify that based on his conversations with Nesbitt and Scott, which did not quite align, and observations he made—Scott and Nesbitt's travel along a known drug corridor from West to East, the fact that the vehicle had been rented by a third party, the fact that Scott had a CDL driver's license, energy drinks in the vehicle, the lived-in look inside the vehicle, and the quick turnaround for such a long trip—he requested a canine unit to respond to his location. DPS Trooper Trevor Topper and his canine responded to the scene and conducted a free-air sniff around the vehicle. Trooper Castillo will testify that he saw the canine positively alert to the odor of narcotics and that he conducted a probable cause search of the vehicle.

Trooper Castillo will testify that he located a large black duffle bag containing numerous bundles of suspected methamphetamine in the trunk of the vehicle.

The government does not anticipate any objections to Trooper Castillo's testimony or videos regarding Scott's statements because Scott, Nesbitt's co-conspirator, made the statements during and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  A co-conspirator's statement falls under Rule 801(d)(2)(E) if there is evidence of a conspiracy involving the declarant and the non-offering party and the statement(s) were in the course and in furtherance of the conspiracy.  *United States v. Bourjaily*, 483 U.S. 171, 175 (1987) (citing Fed. R. Evid. 801(d)(2)(E)); *see also United States v. Fragoso*, 978 F.2d 896 (5th Cir. 1992).  When preliminary facts to admissibility of co-conspirator testimony under Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence.  *Bourjaily,* 483 U.S. at 181.  Whether statements are admissible under this rule is a preliminary question that "shall be determined by the court." Fed. R. Evid. 104(a); *see Bourjaily,* 483 U.S. at 175.  A separate hearing on the admissibility of a co-conspirator's statements is not required.  *Fragoso*, 978 F.2d at 899.

Here, the admissibility of statements made by Johian Scott to Trooper Castillo, which the government will offer both through Trooper Castillo's testimony and videos of the traffic stop, is uncontested.  (Dkt. 68.)  Nevertheless, at the time the government intends to offer statements made by Nesbitt's co-conspirator, the government will ask the Court for a ruling on their admissibility under Fed. R. Evid. 801(d)(2)(E).

Task Force Officer Thomas Newton

      Task Force Officer (TFO) Thomas Newton will testify regarding his secondary search of the vehicle and items he found therein.  He will testify that he immediately noticed a very strong odor emanating from the vehicle.  TFO Newton will further testify that he found laundry fragrance beads in the driver's and passenger's side storage pockets, as well as two empty bottles of cologne.  He will testify that he found two duffle bags of clothing in the trunk where the methamphetamine was stored.  In one of the duffle bags, he found a Ziploc bag of additional laundry fragrance beads consistent with the beads he located in the driver's and passenger's side storage pockets.  Finally, TFO Newton will testify that he located an in-car rear and dash camera inside the vehicle, along with wiring connecting the two cameras.

Special Agent Joseph Curtis

      Special Agent Joseph Curtis will testify that the suspected methamphetamine located during the search of the vehicle's trunk was initially transported to the Oldham County Sheriff's Office.  Agent Curtis will testify that he took custody of the evidence and sent it to the DEA South Central Laboratory for testing.  He will testify that the laboratory confirmed the substances to be a total of 44.12 net kilograms of methamphetamine with an actual weight of 43.67 kilograms and a purity of 99%.   The parties have stipulated in Government's Exhibit 3, Stipulation of Facts, that Government's Exhibit 1, the methamphetamine found in the vehicle's trunk, was at least

500 grams of a mixture and substance containing a detectable amount of methamphetamine.

Agent Curtis will further testify about the steps he took in investigating this case. He will testify that he attempted, unsuccessfully, to obtain evidence from the in-car dash camera found by TFO Newton during his secondary search of the vehicle, and that he also executed a search warrant on the cellular phones of both Nesbitt and Scott. TFO Newton will testify that he did not locate any items of evidentiary value on these devices.

<u>DEA Task Force Officer Vernon Wilson</u>

In his role as an expert witness, DEA Task Force Officer Vernon Wilson will testify as stated in the Government's Designation of Expert Witnesses. Under the Federal Rules of Evidence, a qualified expert witness may offer reliable opinion testimony if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995).

In the context of drug-related criminal trials, the Fifth Circuit has allowed law enforcement expert witnesses to "give background testimony about 'the significance of certain conduct or methods of operation unique to the drug business.'" *United States v. Morin*, 627 F.3d 985, 995 (5th Cir. 2010) (citing *United States v. Sanchez-Hernandez*,

507 F.3d 826, 831 (5th Cir. 2007)).

"Indeed, courts have consistently held that DEA agents and police officers may testify as experts regarding the purity, weight and prices of drugs used for personal consumption versus distribution because such testimony concerns specialized knowledge about drug trafficking, an area with which most jurors are unfamiliar." *United States v. Potts*, No. Crim. A. 00-060, 2000 WL 943219, at *4 (E.D. La. July 7, 2000). An experienced narcotics agent may testify about the street value of a drug. *United States v. Ikner*, No. 02-60125, 2002 WL 31415257, at *6 (5th Cir. Oct. 10, 2002).

Testimony concerning methods of operation unique to the drug business "may permissibly help a jury understand the significance of implications of other evidence presented at trial." *United States v. Gonzalez-Rodriguez,* 621 F.3d 354, 364 (5th Cir. 2010). In *Gonzalez-Rodriguez*, the Court found the following expert testimony permissible: (1) that most large quantity methamphetamine is produced in Mexico; (2) that drug organizations use couriers to transport drugs to the United States for distribution; (3) that drug organizations often transport drugs by hiding them in seemingly legitimate places; (4) that couriers normally do not handle drugs; (5) that a courier probably would not have been the person who hid the methamphetamine in the grapefruit; and (6) that the testifying agent therefore was not surprised when he did not find the defendant's fingerprints on the bundles of methamphetamine. *Id. at* 365. The Court further held that "[t]his testimony discusses the basic business model for running large quantity methamphetamine across the border from Mexico the United States. *Id*.

"This is specialized information that would help a jury understand why the methamphetamine was hidden the way it was, and also rebut [the defendant's] emphasis that his fingerprints were not found on the methamphetamine." *Id*.

TFO Wilson will testify only as an expert witness; he did not participate in the investigation, has not reviewed police reports or videos of the traffic stop, and has no personal knowledge regarding the defendant or the facts of this case. TFO Wilson will testify consistently with the government's designation of expert witnesses. Dkt. 56.

Stipulated Testimony

The government and defendant have signed two documents titled Stipulation of Facts: one concerning the anticipated testimony of DEA Senior Forensic Chemist Kevin J. Roberson, and one concerning the anticipated testimony of DEA Senior Fingerprint Specialist Stacey M. Loggins. Both stipulations have been signed by the parties and pre-admitted as Government's Exhibits 3 and 38, respectfully. The government anticipates that, at the appropriate time, it will request to read the stipulations into the record in lieu of calling these witnesses to testify.

Conclusion

At the conclusion of the trial the government will ask the jury to return a guilty verdict as to Count One and Count Two.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

_____
Assistant United States Attorney
Texas State Bar No. 24079181
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:   806.472.7398
Facsimile:   806.472.7394
E-mail:       stephen.rancourt@usdoj.gov